Filed 5/13/24  In re Baby Girl G. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| In re BABY GIRL G., a Person Coming Under the Juvenile Court Law. | B331750 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. A.C., Defendant and Appellant. | Los Angeles County Super. Ct. No. 22PSJP00047A |

APPEAL from an order of the Superior Court of Los Angeles County, Stacy Wiese, Judge. Conditionally affirmed and remanded with directions.

Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Kimberly Roura, Senior Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

A.C. (father) appeals from the juvenile court's order terminating his parental rights to his daughter, Baby Girl G. (the minor). The only issue father raises on appeal is that the Department of Children and Family Services (Department) failed to conduct an adequate initial inquiry under state law (Welf. & Inst. Code, § 224 et seq.)[1] implementing the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) because it did not, despite being ordered to do so by the court, interview anyone on the paternal grandfather's side of the family about the minor's possible Indian ancestry. We conditionally affirm the order terminating father's parental rights but remand the matter for the limited purpose of ensuring compliance with ICWA and related California law.

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

## FACTS AND PROCEDURAL BACKGROUND

### 1. Proceedings Leading to Termination of Parental Rights[2]

In April 2022, the minor was detained from mother[3] and father[4] on allegations of general neglect after mother, who was homeless, gave birth to the minor under a bridge in Pomona. Paramedics transported the minor, accompanied by father, to a nearby hospital. Mother refused medical attention and did not go to the hospital with the minor.

Mother and father have another child together, T.C., but their parental rights had previously been terminated and T.C. lived with the maternal aunt, Christina. Family members reported that mother had a history of untreated mental illness (bipolar disorder and schizophrenia), and that mother and father had a history of drug use.

In August 2022, the court sustained an amended petition finding true three allegations under section 300, subdivision (b), relating to domestic violence with mother as the aggressor, mother's untreated serious mental health conditions, and substance abuse by mother which rendered her unable to care for the minor. The court sustained similar allegations under section 300, subdivision (j), and an additional allegation that the

---

[2] Because father's sole argument on appeal relates to ICWA compliance, we include only a brief outline of the proceedings below.

[3] Mother is not a party to this appeal.

[4] Although the identity of the minor's biological father was initially unknown, in July 2022 the court found that father is the minor's biological father based on the results of a DNA test.

parents exposed the minor's sibling, T.C., to marijuana smoke and left drug paraphernalia within her reach when T.C. was an infant. Based on those allegations, the court found the minor to be a dependent of the juvenile court.

In October 2022, the court ordered the minor removed from both parents and denied further reunification services. The court set the matter for a permanency planning hearing under section 366.26.[5]

In August 2023, father filed a petition under section 388 seeking additional family reunification services. The court set the matter for hearing.

In September 2023, the court heard and denied father's section 388 petition. On the same date, the court held the permanency planning hearing. The court found the minor was adoptable and that no exceptions to adoption applied. The court therefore terminated the parental rights of both parents and ordered adoption as the permanent plan.

Father timely appeals.

## 2. ICWA Investigation

At the outset of these proceedings, mother's whereabouts were unknown, and the identity of the biological father was not yet known. (Father was an alleged father at that time.) The court did not make any finding under ICWA at the detention hearing.

Early in its investigation, the Department was in contact with maternal relatives—Christina and the maternal grandmother—who indicated possible Indian ancestry on the

---

[5] The permanency planning hearing was continued several times to allow the Department to continue its inquiries under ICWA.

4

maternal family including that prior generations had lived on a reservation in Colorado.[6] Neither mother nor father was in contact with the Department during the initial stages of these proceedings and the Department had not yet contacted any members of the paternal family, likely because father's DNA test to determine paternity had not yet been conducted.

In late May 2022, father filed an ICWA-020 form denying Indian ancestry. In addition, father advised the Department that he grew up with foster parents, a younger sister (P.S.), and an older brother (F.C.) after his biological father (the paternal grandfather) severely abused him when he was three to four years old. Despite the abuse, father said he had been in contact with the paternal grandfather who lived in La Puente and that he was "trying to make things work." Father reported several mental health conditions ("PTSD, OCD, Anxiety, nervous condition, Bipolar, and mild Schizophrenia") and stated that his mother (the paternal grandmother) is his caretaker. The Department was also in touch with the maternal grandmother who advised that the paternal grandmother was in frequent contact with her and with both father and mother.

In July 2022, the Department advised the court that in the prior dependency proceeding as to the minor's sibling T.C., the court found there was no reason to know T.C. was an Indian child. Father again reported that he had no Indian ancestry.

In late July 2022, the court asked the paternal grandmother whether her family had any Indian ancestry, which

---

[6] Father does not claim any error relating to the Department's investigation of the maternal side of the family.

she denied. The court concluded it had no reason to know the minor was an Indian child and found ICWA did not apply.

In early September 2022, the court directed the Department to further investigate both parents' possible Indian ancestry due to recent legal developments. The court noted, "it looks like[ ] both mother and father have possible ICWA ancestry." The court acknowledged father had denied Indian ancestry but specifically instructed the Department to contact the paternal grandfather regarding his heritage. But the Department only contacted the paternal grandmother, who again reported no Indian heritage in her family.

At the disposition hearing in October 2022, father and the paternal grandmother again denied any Indian heritage. The court again found it had no reason to know the minor was an Indian child and found ICWA inapplicable.

In February 2023, father and the paternal grandmother attended a court hearing. Father denied Indian ancestry and the paternal grandmother again stated that her family had no Indian heritage. The Department subsequently reported that the paternal grandmother "denied any ICWA on the paternal side of the family."

In August and September 2023, the court again found ICWA inapplicable.

## DISCUSSION

### 1. Duty of Inquiry

State law imposes on social services agencies and juvenile courts (but not parents) an "affirmative and continuing duty to inquire" whether a child in a dependency proceeding "is or may be an Indian child." (§ 224.2, subd. (a).) When the Department takes a child into temporary custody, its duty of initial inquiry "includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child." (§ 224.2, subd. (b).) Extended family members include adults who are the child's "grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); § 224.1, subd. (c) [adopting federal definition].)

Section 224.2, subdivision (i)(2), provides that if "the court makes a finding that proper and adequate further inquiry and due diligence as required in this section have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that [ICWA] does not apply to the proceedings, subject to reversal based on sufficiency of the evidence."

### 2. The initial inquiry was inadequate and prejudicial.

Father and the paternal grandmother denied Indian heritage when the Department interviewed them and when the court inquired of them. Father also denied Indian heritage on his ICWA-020 form. Based on these denials, the court found it had no reason to know that the minor is an Indian child. Father did not

challenge that finding below but now contends the court and the Department failed to comply with their initial duty of inquiry by failing to ask available paternal relatives about possible Indian ancestry. Specifically, father notes the court ordered the Department to contact the paternal grandfather as part of its ICWA investigation. The record indicates the paternal grandfather was alive and father had recently been in contact with him. But the record does not reflect that the Department ever asked for the paternal grandfather's contact information or made any attempt to locate or contact him. Nor is there any indication that the Department attempted to contact the paternal aunt and uncle, who were identified by father, to determine if they were aware of any Indian heritage on the paternal grandfather's side of the family. The Department does not argue otherwise.

Our appellate courts are divided on the appropriate analytical model to determine the adequacy of an ICWA investigation and potential prejudice from alleged deficiencies. The issue is pending before our Supreme Court.

In *Ezequiel G.*, a majority of this panel concluded that under some circumstances, a juvenile court may properly find the agency has conducted an adequate inquiry to determine whether a child is or may be an Indian child, even if it does not interview any extended family members. (*In re Ezequiel G.* (2022) 81 Cal.App.5th 984.) The *Ezequiel G.* majority explained that the focus of the juvenile court's analysis is not on the number of individuals interviewed, but on whether the agency's ICWA inquiry has yielded reliable information about a child's possible tribal affiliation. (*Id.* at p. 1009.) The *Ezequiel G.* court also concluded the juvenile court's determination of whether there is

8

reason to know a child is an Indian child is reviewed for substantial evidence, but the juvenile court's finding under section 224.2, subdivision (i)(2) as to whether a " 'proper and adequate further inquiry and due diligence as required in this section have been conducted,' " is reviewed for an abuse of discretion. (*Ezequiel G.*, at p. 1004.)

Other courts have concluded a juvenile court's "no ICWA" finding is necessarily unsupported by substantial evidence if the agency failed to interview available extended family members, but they disagree about when such failure is prejudicial error requiring reversal. "[T]he varying standards for prejudice include[e] these four: (1) deficient inquiry necessarily infects the juvenile court's ruling and reversal is automatic and required … (see, e.g., *In re G.H.* (2022) 84 Cal.App.5th 15, 32; *In re A.R.* (2022) 77 Cal.App.5th 197, 207; *In re J.C.* (2022) 77 Cal.App.5th 70, 80; *In re Antonio R.* (2022) 76 Cal.App.5th 421, 432–437; *In re Y.W.* (2021) 70 Cal.App.5th 542, 556); (2) deficient inquiry is harmless unless the record below demonstrates, or the parent on appeal makes an offer of proof or other affirmative assertion of, Indian heritage … (*In re A.C.* (2021) 65 Cal.App.5th 1060, 1069); (3) a deficient inquiry requires reversal where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744); and (4) deficient inquiry is harmless unless the record contains information suggesting a 'reason to believe' the child is an Indian child (*In re Dezi C.* (2022) 79 Cal.App.5th 769, 779, review granted Sept. 21, 2022, S275578)." (*In re V.C.* (2023) 95 Cal.App.5th 251, 260–261.)

We need not discuss the divergent standards in detail here. Excepting the presumptive affirmance approach, we conclude that the application of the tests previously employed by a majority of this panel as well as our fellow appellate courts mandates a remand for further proceedings in this case.

The Department failed to investigate whether the paternal grandfather has Indian heritage. Although father denied that he had Indian heritage, it is uncertain whether he would have known about any such heritage on his father's side. As noted, father was raised by foster parents from a very young age and had minimal contact with the paternal grandfather due to abuse suffered at his hands. Thus, there is reason to believe that his account might not be fully informed. (Cf. *In re Dezi C., supra*, 79 Cal.App.5th at p. 779, review granted [noting a court may have reason to believe a child is an Indian child "if the record indicates that one or both of the parents is adopted and hence their self-reporting of 'no heritage' may not be fully informed"].) Perhaps it was for this reason that the court directed the Department to contact the paternal grandfather. But, for reasons not revealed by the record, it appears the Department made no attempt to do so.

Further, the maternal grandmother indicated several times in court that *her* family did not have Indian heritage. The court did not ask her about the paternal grandfather's family, however, and although the Department reported on one occasion that she said there was no Indian heritage *on the paternal side*, no detail was provided and nothing in the record suggests that the paternal grandmother had any relevant information about the paternal grandfather's family.

In sum, substantial evidence does not support the court's finding that the Department conducted an adequate initial

10

inquiry and exercised due diligence. Specifically, the Department failed to make a reasonable inquiry about the paternal grandfather's family despite the court's proper directive that it do so. Because we are unable to find this error harmless, we remand the matter for further inquiry as to the paternal grandfather's family and compliance with ICWA.

## DISPOSITION

The order terminating parental rights is conditionally affirmed. The case is remanded to the court to order the Department to comply immediately with the inquiry provisions of Welfare and Institutions Code section 224.2 as to the paternal grandfather's family. After ensuring the Department has complied with the inquiry, and, if applicable, notice provisions of ICWA and related California law, the court shall determine whether ICWA applies. If the court determines ICWA does not apply, the order terminating parental rights shall remain in effect. If the court determines ICWA does apply, it shall vacate its order terminating parental rights and conduct further proceedings as required under ICWA and related state law.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

LAVIN, J.

WE CONCUR:

EDMON, P. J.

EGERTON, J.